UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| DAVID PENA, | ) |
| Plaintiff, | ) ) Civil No. 3:23-cv-00071-GFVT ) |
| v. | ) **MEMORANDUM OPINION** |
| MARTIN O'MALLEY, *Commissioner of Social Security* | ) **&** ) **ORDER** ) |
| Defendant. | ) ) |

*** *** *** ***

David Pena seeks judicial review of an administrative decision denying his claim for disability insurance benefits. Mr. Pena brings this action pursuant to 42 U.S.C. § 405(g), alleging error on the part of the administrative law judge who considered the matter. The Court, having reviewed the record and for the reasons set forth herein, will **DENY** Mr. Pena's Motion for Summary Judgment [R. 13] and **GRANT** the Commissioner's [R. 15].

I

Plaintiff David Pena applied for Supplemental Security Income disability benefits on January 14, 2022, alleging disability beginning January 1, 2019. [R. 10-5 at 2.] Social Security Administration ALJ Jerry Lovitt denied Mr. Pena's claim on initial review. [R. 10-2 at 15]. On appeal, the Social Security Administration again denied Mr. Pena's claim. *Id*. at 2. Mr. Pena then filed a Complaint with this Court, seeking review under 42 U.S.C. § 405(g). [R. 1.] Both parties have now filed motions for summary judgment which are ripe for review. [R. 13; R. 15.]

II

To evaluate a claim of disability for Supplemental Security Income disability benefits, the ALJ conducts a five-step analysis. *See* 20 C.F.R. § 416.920. If at any step the ALJ can find

that the claimant is disabled or not disabled, the analysis stops. *Id.* § 404.1520(a)(4). First, if a claimant is performing substantial gainful activity, he is not disabled. *Id.* § 404.1520(a)(4)(i). Second, if a claimant does not have a severe impairment or combination of impairments, he is not disabled. *Id.* § 404.1520(ii). Third, if a claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. *Id.* §§ 404.1520(a)(4)(iii), (d).

Before moving on to the fourth step, the ALJ must use all the relevant evidence in the record to determine the claimant's residual functional capacity, which assesses his ability to perform certain physical and mental work activities on a sustained basis despite any impairment. *See id.* C.F.R. §§ 404.1520(e), 404.1545. Under the fourth step, an ALJ uses a claimant's RFC to determine whether he is still able to do his past work. *Id.* § 404.1520(a)(4)(iv). If so, he is not disabled. *Id.*

Finally, if an ALJ assesses a claimant's RFC in conjunction with his age, education, and work experience and finds that the claimant cannot adjust to perform other jobs available in significant numbers in the national economy, the claimant is disabled. *See Id.* §§ 404.1520(g), 404.1560(c). Through step four of the analysis, "the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A

The ALJ completed the five-step analysis to determine Mr. Pena's disability status. [R. 10-2 at 20-35.] He first determined that Mr. Pena had not engaged in substantial gainful employment during the period in which he claimed to be disabled. *Id.* at 20-21. Second, the

ALJ found that Mr. Pena had the following severe impairments: obesity, degenerative joint disease, degenerative disc disease, right lower extremity dysfunction, left hip dysfunction, anxiety disorder, depressive disorder, post-traumatic stress disorder (PTSD), and polysubstance/cannabis use disorder. *Id.* But at step three, the ALJ found that none of these impairments nor any combination of them met "or medically equal[ed] the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 . . . ." *Id*. at 21-24.

Before proceeding to step four, the ALJ fashioned Mr. Pena's RFC. *See* 20 C.F.R. § 404.1520(e). After considering the record, the ALJ determined that:

> the claimant has the residual function capacity to perform sedentary work as defined in 20 CFR 416.967(a) except occasional climbing of ramps/stairs; occasional balancing, stooping, kneeling, and crouching; no crawling; no climbing of ladders ropes or scaffolds; no exposure to unprotected heights; no more than occasional exposure to vibrations; no exposure to workplace hazards such as dangerous machinery with moving parts that fail to stop when human contact is lost; no driving or operation of heavy machinery or drivable workplace equipment such as a forklift or side loader; only occasional push of foot controls with the bilateral lower extremities; able to understand, remember, and carry out simple, routine instructions; able to sustain concentration completing simple, repetitive, routine tasks; can use judgment in making simple work-related decisions consistent with this type of work, and requires an occupation with a familiar and predictable routine with established procedures in place, and with minimal changes occurring during the workday; no manufacturing sector fast-paced production line, hourly quota, or production pace assembly line work; frequent interactions supervisors and coworkers as needed for task completion; occasional interactions with the general public; would require use of a hand held assistive device for assistance with ambulation only.

[R. 10-2 at 24-25.]

To make this finding, the ALJ first determined that Mr. Pena's medically determinable impairments could reasonably be expected to cause his alleged symptoms. *Id.* at 25. However, the ALJ found that Mr. Pena's statements regarding the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical and other evidence in the record. *Id*. at 25-26. After evaluating Mr. Pena's statements, treatment records, prior

3

administrative medical findings, the medical opinions of Dr. Whitten (a psychiatric examiner) and Physician Assistant-Certified Means, and the third-party function report of Ms. Reyes, the ALJ found that the objective, medical evidence indicated support for the above RFC. *Id*. at 25-34. In making this conclusion the ALJ contrasted prior administrative medical findings with more recent medical evidence of Mr. Pena's health difficulties after he was struck by a car. *Id*. at 29-30. The ALJ also carefully weighed the medical reports of Dr. Whitten and PA-C Means with the objective evidence from other sources. *Id*. at 31-32.

Next, the ALJ proceeded to step four. *Id*. at 34. He considered the testimony of a vocational expert and concluded that Mr. Pena would not be able to perform his past relevant work as an electrician helper. *Id*. Proceeding to step five, the ALJ heard from a vocational expert and determined that there are numerous jobs Mr. Pena can perform in the national economy, such as sewing machine operator, inspector/tester, and eyeglass polisher. *Id*. at 35. Therefore, then ALJ found that Mr. Pena is "not disabled." *Id*.

**B**

The Court's review of the ALJ's determination is limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). "Substantial evidence" is said to be "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The substantial evidence standard "presupposes that there is a zone of choice within which [administrative] decision makers can go either way, without interference by the courts." *Mullen*

4

*v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

To decide whether substantial evidence exists, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). A reviewing court is restricted from making factual findings *de novo*, resolving conflicts in the evidence, or making credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012). Rather, if the Commissioner's decision is supported by substantial, legitimate evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *Id.* at 714.

Mr. Pena takes issue with the ALJ's discounting of PA-C Means's medical source statement. [R. 13]. He argues that the ALJ's reasoning "did not adequately address the mandatory factors laid out in 20 C.F.R. § 404.1520c" and therefore the ALJ's RFC determination cannot be deemed to be supported by substantial evidence. *Id.* at 6. Per 20 C.F.R. § 404.1520c, the Commissioner evaluates medical opinions in terms of consistency and supportability, along with other factors not at issue in this case. According to Mr. Pena, the ALJ engaged in a cursory analysis of these two factors and improperly found PA-C Means's opinion "not persuasive." [R. 13 at 7.]

**1**

The crux of Mr. Pena's argument is that "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under Mr. Pena's theory, the ALJ's decision did

5

not adequately grapple with PA-C Means's medical opinion as to Mr. Pena's extreme limitations, and, if the ALJ had done so, Mr. Pena would be incapable of any meaningful work at all. Instead, Mr. Pena's RFC is overly generous as to his capabilities. Per Mr. Pena, "[t]his is not a mere disagreement with how the ALJ evaluated the opinion evidence" but rather an issue with the ALJ's "failure to properly comply with the controlling regulation." [R. 16 at 1]. In contrast, the Commissioner argues that Mr. Pena is simply disputing the weight the ALJ ultimately gave to PA-C Means's medical opinion. [R. 15.] Either way, the result is the same.

PA-C Means first saw Mr. Pena in-person at Baptist Health on April 13, 2023. [R. 10-9 at 294.] PA-C Means again saw Mr. Pena in-person on April 20, 2023. *Id*. at 266. PA-C Means also held telephone appointments with Mr. Pena on April 28, 2023, and May 3, 2023. *Id*. at 203, 216. In her Physical Medical Source Statement, PA-C Means diagnosed Mr. Pena with multiple rib fractures, a left hip and lumbar spine impairment, cellulitis of the right leg, and PTSD and listed Mr. Pena's symptoms as chronic leg, hip, and back pain; weakness in the right leg; and numbness in both lower extremities. *Id*. at 328. As a result of these examinations, PA-C Means opined that Mr. Pena

> can stand/walk a total of less than two hours in an eight-hour workday, sit a total of about two hours in an eight-hour workday, needs a job that permits shifting positions at will from sitting, standing or walking, needs to take unscheduled breaks every 10 to 15 minutes for 20 minutes, needs to elevate his legs 40 percent of an eight-hour workday due to swelling… will be off task 25 percent or more, and will miss more than four days of work per month.

[R. 10-2 at 31.] PA-C Means also noted that in her opinion Mr. Pena is "not capable" of any type of gainful employment. *Id*. Per the vocational expert, if these limitations were accurate then Mr. Pena would not be competitive for employment. *Id*. at 66-67.

Despite Mr. Pena's assertions, it appears the ALJ actively considered the supportability and consistency factors when assessing PA-C Means's medical opinion. First, the ALJ did note

that PA-C Means's opinion was supported by her handwritten explanations, [R. 10-2 at 31-32], a point which Mr. Pena belabors in great detail. [R. 13.] This alone suggests that the ALJ gave some consideration to the support for PA-C Means's medical opinion. Furthermore, the Court will note that the existence of handwritten notes alone is not determinative – their content and context is relevant as well. *See generally Beasley v. Colvin*, 520 F. App'x 748 (10th Cir. 2013) (No need for ALJ to discuss doctor's handwritten notes when they did not involve significantly probative evidence that the ALJ was rejecting); *Howard v. Commissioner of Social Security*, 276 F.3d 235, 241-42 (6th Cir. 2002) (ALJ improperly dismissed treatment notes because "they 'consist[ ] mostly of handwritten gobblegook notes from the doctor' that have 'no probative value in this case.'").

The real issue with the ALJ's assessment is his unsupported assumption that the fact that some of Mr. Pena's visits with PA-C Means were telephonic indicates "no physical examination was performed" and that the suggested limitations must be based on "the claimant's subjective complaints." [R. 10-2 at 31-32.] The summary of Mr. Pena's office visit with PA-C Means seems to contradict the assertion that no physical examination was performed. [R. 10-9 at 294-320.] Despite this error[1], the ALJ also concluded that PA-C Means's opinion is not consistent with the overall objective evidence from other sources. [R. 10-2 at 31-32.]

The ALJ considered Mr. Pena's self-reported activities, including caring for his personal needs, preparing simple meals, shopping in stores, and taking care of the household when his girlfriend was in the hospital. *Id*. at 24, 28. The ALJ also considered the medical record, including prior administrative medical findings. *Id*. at 26-27, 30. Reviewing that record, the ALJ

---

[1] While it is not clear from the ALJ's decision, it is also conceivable that in context the statement "no physical examination was performed" is directed at those visits between Mr. Pena and PA-C Means that were telephonic and not at their overall interactions – a much more believable conclusion.

7

noted "the record does not document swelling that is not treatable with prescription medication requiring the claimant to elevate his legs." *Id*. at 32.  Nor did it support "the need to be off task 25 percent or more or the need to miss more than four days of work per month," given Mr. Pena's lack of acute distress on multiple occasions.  *Id; See also* [R. 10-9 at 15, 99.] Furthermore, these records included a physical examination given to Mr. Pena on April 23, 2023 – after his visits with PA-C Means and after he was struck by a car.  [R. 10-9 at 13-16.]  As 20 C.F.R. § 404.1520c states, "[t]he more consistent a medical opinion…is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion…will be."   The ALJ also properly disregarded PA-C Means's contention that she does not "believe [Mr. Pena] will be capable of any type of gainful employment."  [R. 10-9 at 331.]; *See* 20 C.F.R. § 404.1520b(c)(3) (statements on issues reserved to the Commissioner, including statements that "[a claimant is] or [is] not disabled…able to work, or able to perform regular or continuing work," are "inherently neither valuable nor persuasive.")

In determining whether he would credit PA-C Means's medical opinion as persuasive, the ALJ directly engaged with those proposed limitations that would make Mr. Pena unable to perform even sedentary work – the need to elevate his leg for significant portions of the day and the need to have significant time off task and off work.  [R. 10-2 at 31-32.]  The ALJ found that those limitations were not consistent with other evidence in the record.  *Id*.  And the ALJ did credit another limitation proposed by PA-C Means, that Mr. Pena "requires an assistive device for all surfaces and activities."  *Id*.

Mr. Pena contends that "[e]ven if substantial evidence supports the ALJ's decision, if the ALJ failed to follow Social Security Administration (Agency) rules and regulations the decision should be reversed *if the error prejudiced the claimant on the merits*."  [R. 13 at 2 (citing *Cole v.*

8

*Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)) (emphasis added).] Setting aside the fact that the *Cole* court addressed 20 C.F.R. § 404.1527(d)(2), a different provision of the CFR directed only at claims filed before March 27, 2017, the ALJ's error in this case did not prejudice Mr. Pena on the merits. The ALJ's assumptions regarding the nature of PA-C Means's appointments with Mr. Pena are regrettable, but they do not show that his decision to disregard PA-C Means's medical opinion was unsupported by substantial evidence.

### III

Mr. Pena objects to the ALJ's rejection of his application for disability benefits. While the Court sympathizes with Mr. Pena's predicament, its role is not to retry his case. Instead, the Court finds that substantial evidence supported the ALJ's opinion. Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that Mr. Pena's Motion for Summary Judgment **[R. 13]** is **DENIED**, and the Commissioner's Motion for Summary Judgment **[R. 15]** is **GRANTED**. Judgment in favor of the Commissioner will be entered promptly.

This the 16th day of October 2024.

Gregory F. Van Tatenhove
United States District Judge